. The opinion of the court was delivered by
Tirghman, C. J.
The right of the legislature to impose a tax' is not denied, but it is denied that this,- or any other bridge, is one of the articles designated-for taxation, by the act of assembly. It is enacted, in the 8th section, that the assessors' in the several counties, with their assistants, shall take an account of the following articles hereby made taxable, viz. “all land held by patent, warrant, location, or improvement; houses, and.lots of ground, and ground-rents, all grist-mills, saw-mills, fulling'-mills, slitting-mills, rolling-mills, hemp-mills, oil-mills, snuff-mills, paper-mills, and powder-mills; all furnaces, forges, bloomeries, distilleries, sugar-houses, malt-houses, breweries, tan-yards, and ferries,” besides several articles of personal property, not necessary to mention, •“and when the enumeration shall be made as aforesaid, the said assessors, with their assistants, shall proceed to value the aforesaid property, to the best of their ability and judgment, for what they think it will bona fide sell for, in ready money. ” In order to make the Schuylkill bridge an objeet of taxation, it must be shown to fall within the list of enumerated articles. It certainly is property, and very valuable property,.but of what nature? It is-neither land, house, or lot. It was erected, under the authority of an act of assembly, passed the 16th of March, 1798, (by which the company was incorporated,) over a navigable river,common toall the citizens of the commonwealth,in which the plaintiffs have no speeial property. The bridge itself, though it cost an immense sum of money, would be of little value, were it not for the right of taking, tolls annexed to it. It would seem, therefore, that if it had been-intended to make it subject to a tax, the law would have pointed out the mode in which it should be valued, which ought to have been by reference to the annual amoun.t of the tolls. FtSr, suppose the assessors were to value the bridge for the sum which it would sell for in ready money, without regard to the tolls, the amount would be very trifling; and yet there is no other mode of valuation authorized by the act of assembly. But, it has been said by the coun-. sel for the defendant, that this bridge comes within the meaning of a ferry, one of the enumerated articles. A ferry is the water over which a boat passes. There can be no ferry, without some kind of boat, or vessel, in which men, or things, are carried. To ferry *425 a person over a water, is to carry him over the water. But this is not done when he walks or rides over a bridge. Acts of assembly should be construed according to common parlance.’ Now, there is scarce a man in the state,-who, when he had passed on a bridge, Would say that he had been ferried over the river. Before the erection of this bridge, every one spoke of the middle ferry. When the bridge was finished, it was called the bridge, and the word ferry has not been beard.. But, it has been objected, that the floating bridge, at the lower ferry, belonging to the family of Gray, has been taxed as a ferry. There is very little weight in this circumstance, because the floating bridge is not used all the year. In high floods, which happen in the course of every yéar, the bridge is suffered to swing down with the current, and then the passage is in a boat; so that there is an actual ferry. It is worthy of consideration, that the plaintiffs were incorporated in the year 1798, and the law under which this tax was laid, was passed the year after, so that it must have been known to the legislature, that there would soon be a bridge erected, from which considerable profit was expected. Why, then, were not bridges mentioned in the enumerated articles. — This may be accounted for. It might have been thought impolitic to damp that spirit of enterprise, which might lead to the construction of bridges over all our rivers; an object of vast importance to the state, and not to be accomplished without great cost and hazard. If this was the policy of the legislature, it has been crowned with signal success. Witness the noble structures over thé Delaware-, the Schuylkill, the Susquehanna, the Allegheny, and the Monongahela. These are works such as no other state can boast of, and Pennsylvania may justly take pride in them. But the companies by which they were erected, ystood in need of encouragement. Not only was the cost very great, but the hazard also. The Schuylkill bridge is at present so well established, that its stock is considerably above par. But many years had elapsed before that was the case. And even now, it is understood, that the average dividends on the money expended, from the beginning, do not exceed three and a third per cent. Great disasters have befallen several of the Susquehanna bridges. One of them (at M'Call's Ferry,) was swept away, it is feared, never to rise again. The taxation of this kind of property is a subject which requires great consideration. The general opinion has been, that it was not included in the act of 1799. The Schuylkill bridge was not assessed till lately, and it is believed, that the bridges over the other great rivers have never been taxed. This must have been well known to the legislature, and yet no law has been passed, expressly directing their assessment. But the question is, whether they are subject to the county tax, by the existing law. They certainly are not expressly enumerated, and I think It equally certain, that we ought not to include them in the list of assessable articles, by a strained construction. Our legislature is con» *426 vened annually; and whenever it shall be satisfied that it is for the public good to impose a tax on bridges, roads, or other works of that nature, to which the right of demanding toll is annexed, it will be done in such manner, as, under all circumstances, shall be judged proper. I am of opinion, that, under the present law, the Schuyl-Icill bridge is not liable to the county tax, and, therefore, the judgment should be entered for the plaintiffs.
Judgment for the plaintiffs,